UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD COX; VICTOR COX; and ADAM COX, individually, by and through his durable power of attorney, VICTOR COX,, <br><br>　　　　　　　　　　　Plaintiffs, <br><br>v. <br><br>AMETEK, INC.; and THOMAS DEENEY, <br><br>　　　　　　　　　　　Defendants. | Case No.: 3:17-cv-01211-GPC-AGS <br><br>**ORDER GRANTING MOTION TO AMEND AND DENYING MOTION TO DISMISS** <br><br>**[ECF Nos. 12 and 24]** |

  Before the Court are two pending motions, both of which are fully briefed. The first is a motion to amend the complaint, filed by Plaintiffs on August 4, 2017. (ECF No. 12.) Defendants filed a response on August 25, 2017 (ECF No. 23), and Plaintiffs filed a reply on September 8, 2017 (ECF No. 28). The other is a motion to dismiss filed by Defendant Thomas Deeney ("Deeney") on August 28, 2017. (ECF No. 24.) Plaintiffs filed a response on September 22, 2017 (ECF No. 30), and Deeney filed a reply on October 3, 2017 (ECF No. 31). For the reasons set forth below, the Court GRANTS the motion to amend, and DENIES the motion to dismiss. The Court addresses these motions in reverse order.

## I. Plaintiffs' Complaint

In this case, Plaintiffs assert a wrongful death claim against Defendants Ametek, Inc. ("Ametek"), and Deeney, stemming from the death of Plaintiffs' mother, Arla Cox ("Cox"). Plaintiffs' complaint alleges the following relevant facts.

In 1968, Ametek purchased a company that operated a business at 790 Greenfield Drive (the "Greenfield Property") in El Cajon, California. (ECF No. 1 at 3 ¶ 11.) Ametek used this property to manufacture aircraft engine parts between 1968 and 1988. (*Id.* at 4 ¶ 12.) In late 1988, Ametek spun off a company called "Ketema." (*Id.* ¶ 14.) One of Ketema's assets was the Greenfield Property. (*Id.*) The Greenfield Property is now owned by Senior Operations, LLC ("Senior"), which does business as Senior Aerospace Ketema. (*Id.* ¶ 17.)

As early as 1952, the prior owner of the Greenfield Property began storing toxic waste in an underground redwood sump at the Greenfield Property; Ametek continued to do so after acquiring the property. (*Id.* at ¶ 13; 5 ¶ 19.) At some point, the contents of the sump leached and leaked chlorinated solvents and other chemicals into the groundwater and subsurface soil. (*Id.* at 4 ¶ 13.) Ametek continued to place this toxic waste in the sump until 1985. (*Id.*) By 1988, Ametek was aware that the leakage had migrated from the Greenfield Property "into the downgradient groundwater beyond its western property boundary." (*Id.*)

The waste from the sump included spent acid and alkaline solutions; industrial chlorinated solvents; 1, 1, 1- trichloroethane; trichloroethylene ("TCE"); tetrachloroethylene ("PCE"); oils; paint thinner; and process sludge. (*Id.* at 6 ¶ 24.) In 1987 and 2007, the measured chlorinated solvent concentrations exceeded by a large measure the California Department of Public Health's "Basin Plan Water Quality Objectives." (*Id.* at 7 ¶ 29.) The discharge has caused one of the largest TCE/chlorinated solvent plumes in California history, having spread 1.3 miles westward. (*Id.* ¶¶ 30, 31.) Plumes of PCE, 1,1-DCA, benzene, toluene, ethylbenzene, and xylene also exist in the groundwater. (*Id.* at 8 ¶ 32.) According to Ametek's environmental consultants, the

plume has contaminated the groundwater and soil beneath a neighboring elementary school and three mobile home parks known as Greenfield, Starlight, and Villa Cajon. (*Id.* ¶ 33.) According to information from the federal Environmental Protection Agency, TCE, PCE, TCA, DCE, Dioxane, and Vinyl Chloride are associated with serious health risks, including cancer. (*Id.* at 8–12 ¶¶ 34–36.)

In 1998, the California Regional Water Quality Control Board (the "Board") named Ametek as a responsible party in a cleanup and abatement order (the "1998 CAO"), and required Ametek to "duly delineate the plume, submit a Feasibility Study, submit a Remedial Action Plan, and otherwise fully comply" with the order. (*Id.* at 13 ¶ 39.) The Board named Ametek as a responsible party in another cleanup and abatement order in 2002 (the "2002 CAO"). (*Id.* ¶¶ 40–41.) Ametek and Deeney chose not to comply with the 1998 or 2002 CAOs. (*Id.* ¶ 42.)

In 2008, the Board filed an administrative complaint against Ametek as a result of Ametek's failure to comply with the 2002 order. (*Id.* 13–15 ¶¶ 44–45.) The administrative complaint alleged that Ametek failed to install and collect groundwater samples and failed to complete a feasibility study report, both in violation of the Board's directives. (*Id.* at 13–14 ¶ 44.) It also alleged that Ametek and a party named "S&K" were responsible for delineating and remediating the contamination, yet failed to submit sufficient reports to the Board despite being repeatedly advised that their submissions to the Board were incomplete or deficient. (*Id.* at 14 ¶ 45.) It also stated that these actions had allowed "significant concentrations of contaminants to remain in place as a continued source of pollution," and "have caused a condition of pollution and contamination in the ground water beneath the El Cajon Valley with continuing impacts to the existing beneficial uses of the Santee/El Monte Basin." (*Id.* at 14–15 ¶ 45.) The complaint called Ametek and S&K's actions inappropriate, "not only in their efforts to complete the delineation of the plume, but in their responsibilities to implement appropriate cleanup and abatement measures in a reasonable amount of time." (*Id.*) The Board sent "numerous letters" and "Notices of Violation" to Ametek and Deeney as a result of their

violations of the 1998 and 2002 orders, but Ametek and Deeney ignored them. (*Id.* at 15 ¶ 46.)

In 2015, the Board of Governors of the Cajon Valley Union School District voted to close an elementary school adjacent to Greenfield, Starlight, and Villa Cajon as a result of the plumes. (*Id.* ¶ 47.) According to the Department of Toxic Substances Control, tests from the elementary school site contained unacceptable levels of toxins. (*See id.* at 15–21.) The cancer risk as a result of these toxins at one point reached 42 times the threshold level at which the Department of Toxic Substances Control would take action. (*Id.* at 21 ¶ 64.)

Greenfield is a mobile home park located due west and down-gradient of the Greenfield Property; Starlight is due west-northwest and down-gradient of the Greenfield Property; and Villa Cajon is due west-northwest and down-gradient of the Greenfield Property. (*Id.* ¶¶ 65–67.) The plume flowed directly underneath the mobile home parks. (*Id.* ¶ 68.) The first indoor air and crawl space vapor sampling at the mobile home parks did not occur until February 2017. (*Id.* at 22 ¶ 72.) All 17 samples tested positive for TCE vapor intrusion into the indoor air and crawlspace; the results significantly exceeded the "Urgent Response Action Level." (*Id.* ¶¶ 74–75.)

Arla Cox, the decedent, was a resident in Villa Cajon from 1976 until she passed away in 2001. (*Id.* at 21 ¶ 67.) The two units she lived in during that time were "situated directly above the same groundwater contamination plume causing this indoor air intrusion." (*Id.* at 22–23 ¶ 77.) Cox's death was caused by a kidney tumor. (*Id.* at 24 ¶ 82.) Cox was not a smoker. (*Id.*) Kidney cancer is one of the known effects of exposure to TCE. (*Id.* ¶ 85.) Plaintiffs assert that Cox's kidney tumor and her death "were a direct result of her decades long exposure to toxic TCE vapors emanating from the contamination plume created" by Defendants. (*Id.* ¶ 87.)

Deeney is a corporate officer and employee of Ametek, and was "responsible for decision making and capable of binding Ametek." (*Id.* at 1 ¶ 5; 24 ¶ 89.) Deeney "personally and consciously ignore[d] official State of California Cleanup and Abatement

4

Orders, official State of California Notices of Violation, and many letters from the State of California regarding" Ametek's failure to delineate and remediate the plume; this permitted the plume to grow and cause additional harm. (*Id*. at 24 ¶ 89.)

## II. Motion to Dismiss

### a. Legal Standard

A Rule 12(b)(6) motion attacks the complaint as containing insufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### b. Discussion

Deeney moves to dismiss the wrongful death claim against him on the ground that the complaint does not allege sufficient facts to suggest that Deeney's conduct caused Cox's death.

The elements of a wrongful death action under California law "include (1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999) (quoting Cal. Civ. Proc. Code § 377.60). "There are two aspects to proximate causation: cause in fact . . . ; and public policy considerations that are held to limit an actor's liability for the consequences of his conduct." *See Pipitone v. Williams*, 198 Cal. Rptr. 3d 900, 919 (Cal. Ct. App. 2016). Cause in fact is established when the defendant's conduct "is a substantial factor in bringing about the injury." *Rutherford v. Owens-*

*Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997). "[C]onduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." *Pipitone*, 198 Cal. Rptr. 3d at 919 (quoting *Yanez v. Plummer*, 164 Cal. Rptr. 3d 309, 313 (Cal. Ct. App. 2013)). The second "aspect" of causation considers whether "it would be considered unjust to hold [the defendant] legally responsible" for the harm to the plaintiff. *State Dep't of State Hosps.*, 349 P.3d at 1022 (quoting 6 Witkin, *Summary of Cal. Law*, Torts § 1186). "Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." *State Hospitals*, 349 P.3d at 1022.

Deeney argues that the allegations in Plaintiffs' complaint are insufficient to satisfy either aspect of causation. Deeney claims that he did not begin the relevant work at Ametek until 1998, just three years before Cox passed away in 2001. As a result, he argues, the allegations do not state a plausible claim that there was anything Deeney could have done during that period that would have prevented Cox's death.

The Court rejects Deeney's argument for two reasons: (1) there are no allegations in Plaintiffs' complaint suggesting that Deeney only started his relevant work at Ametek in 1998, and the Court may not take judicial notice of that fact just because it is alleged somewhere in a different case, and (2) even assuming that fact to be true, the complaint's allegations are sufficient to state a plausible claim that Deeney's failure to take proper action in response to the contamination caused Cox's untimely death. The Court therefore DENIES Deeney's motion to dismiss.

### i. Judicial Notice

In his motion, Deeney concedes that Plaintiffs' complaint says nothing about when Deeney began his relevant work at Ametek. He instead points the Court to complaints filed in two other cases, *Trujillo, et al. v. Ametek, Inc., et al.*, No. 15-cv-01394 (S.D. Cal.), and *Cox, et al. v. Ametek, Inc., et al.*, No. 17-cv-00597 (S.D. Cal.), in which the plaintiffs allege that Deeney was "responsible for decision making and capable of binding

Ametek, between at least 1998 and 2008." (*Trujillo*, ECF No. 101 at 10 ¶ 43; *Cox*, ECF No. 5 at 22 ¶ 90.) Without suggesting how—or under what authority—the Court should use this information, Deeney argues that the Court should accept this fact as true and rely on it to conclude that his involvement in the Greenfield Property's contamination hazard could not have caused Cox's death.

The Court lacks authority to take notice of this fact. "While matters of public record are proper subjects of judicial notice, a court may take notice only of the existence and authenticity of an item, not the truth of its contents." *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1084 n.1 (S.D. Cal. 2016). In other words, the Court may take notice of the fact that these pleadings were filed and that the pleadings contain certain assertions; it may not, however, assume the factual truth of those assertions. *See, e.g.*, *Ransom v. Herrera*, No. 1:11-cv-01709-LJO-EPG (PC), 2016 WL 7474866, at *4 (E.D. Cal. Dec. 28, 2016) (refusing, at the motion to dismiss stage, to take judicial notice of the plaintiff's complaint in another case because "Defendants appear to be asking that the Court take judicial notice of facts asserted in that complaint," and "[w]hile Plaintiff's factual allegations in another complaint would be relevant for determining the underlying merits of the case, they are not properly the subject of judicial notice").

### ii. Adequacy of Causation Allegations

Because Deeney's motion to dismiss theory is premised on the assertion that he had no role in creating or mitigating the effects of Ametek's contamination until 1998, the Court's conclusion above is sufficient to deny the motion in its entirety. The Court notes, however, that even if it could assume that Deeney was not involved in Ametek's actions with regard to the Greenfield Property until 1998, Plaintiffs would still survive Deeney's Rule 12(b)(6) challenge.

Deeney argues that Plaintiffs' claims against him are merely speculative because they fail to allege facts demonstrating that Deeney's conduct contributed to Cox's death. According to Plaintiffs' complaint, Ametek stopped placing waste in its sump on the Greenfield Property by 1985. (ECF No. 1 at 5 ¶ 23.) Deeney argues that, because

7

3:17-cv-01211-GPC-AGS

Deeney was not involved with the Greenfield Property until 1998—by which time Cox had already been exposed to dangerous chemicals for two decades—Deeney's actions could not have contributed to Cox's decline in health. Moreover, according to Deeney, the complaint's assertion that Deeney's failure to comply with the 1998 cleanup and abatement order contributed to Cox's death is merely speculative because the complaint does not specify what he "did or did not do that would have affected [Cox] individually, including with respect to the alleged failure to comply with the 1998 CAO." (ECF No. 24-1 at 8.) The Court disagrees. It is at least plausible that had Deeney decided to comply with the 1998 CAO—by delineating the plume, submitting a feasibility study, and submitting a remedial action plan (*see* ECF No. 1 at 13 ¶ 39)—Cox would not have passed away when she did. The complaint suggests that Cox lived on the contaminated property until her death in June of 2001; Deeney was therefore responsible for the abatement effort for two and a half years prior to Cox's death. It is plausible that, had Deeney initiated a cleanup effort at the time he began his role at Ametek, Cox would have had a smaller period of exposure to toxic vapors, and as a result, would have lived longer than she did.[1]

These facts make this case unlike *Pipitone*, upon which Deeney heavily relies. There, after the plaintiff's daughter was murdered by her husband, the plaintiff brought wrongful death actions against the husband's father—a physician—and another physician, both of whom previously observed evidence of abuse but did not report it. 198 Cal. Rptr. 3d at 905–07. The Court of Appeal held that summary judgment in favor of the physicians was proper because, *inter alia*, the plaintiff offered insufficient evidence of causation. *Id.* at 919–22. Between the physicians' failure to report and the wife's death,

---

[1] Deeney argues that it is likely that Cox was diagnosed with cancer prior to 1998. This makes no difference to the Court's analysis. At this stage, the Court must "draw all reasonable inference in favor of the plaintiff[s]," not Deeney. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). Moreover, even if Cox had cancer prior to Deeney's involvement in the contamination, Deeney's failure to mitigate the plume's hazardousness could have exacerbated Cox's condition.

the following occurred: the plaintiff and her sister reported the husband's abuse to the police and told an officer that they feared for the wife's death; the officer interviewed the wife, who told the officer that she should "keep her mouth shut" because she feared retribution from the husband; and the officer reported the husband's probation violations to two police jurisdictions. *Id.* at 921. The court explained that the plaintiff offered no evidence that had the physicians "suspected abuse, a resulting investigation would more likely than not have achieved a different or better outcome than the investigation that actually took place," and that "the inquiry by law enforcement would have been only the first step in a necessary chain of discretionary decisions by the police or sheriff's department, which would have had to culminate in the arrest and detention" of the husband. *Id.* at 922.

Two important features distinguish this case from *Pipitone*. First, the chain of causation is less extended; in fact, it does not appear to be extended at all. The complaint raises the inference of a direct causal link between the contamination under Cox's property and the onset and advancement of her cancer. It is plausible to conclude that if Deeney, through Ametek, had taken steps to mitigate the damage of the plume's contamination, he would have reduced Cox's exposure to carcinogenic chemicals. This is different than the circumstance in *Pipitone*, where, not only did the actions of multiple other actors stand between the physician's reporting the abuse and the wife's murder, but abuse was actually reported by others. Whereas there was no reason to think that the physicians' reporting would have made any difference in *Pipitone*, there is sufficient reason to believe that remediation by Ametek in 1998 would have prolonged Cox's life. Second, the *Pipitone* court found it important that some of the links in the causal chain between the physician's conduct and the wife's death were "discretionary decisions," including the police's decision to arrest the husband. *Id.* (distinguishing *Landeros v. Flood*, 551 P.2d 389 (Cal. 1976), on this basis); *see also State Hospitals*, 349 P.3d at 1025 n.16 (same). There is no suggestion in the complaint that any discretionary

decisions sat between Deeney's ability to mitigate the plume's hazardousness and the resulting health benefits to the area's residents.

Deeney further contends that "holding him personally liable [in this case] is contrary to public policy." (ECF No. 24-1 at 10.) But Deeney offers no explanation of what aspect of public policy would be violated if he were to be held liable to Plaintiffs. (*See id.* at 10–11.) Instead, he offers two unrelated points. First, Deeney seems to suggest that a heightened pleading standard should be applied to Plaintiffs' claims. He cites *Jones v. Ortho Pharm. Corp.*, 209 Cal. Rptr. 456, 460 (Cal. Ct. App. 1985), for the proposition that, in the context of a claim arising from exposure to hazardous substances, a plaintiff must prove causation "to a reasonable medical probability based upon competent expert testimony." But this standard is relevant only to the form of evidence that must be presented to the trier of fact when proving such a claim under California law. For purposes of a motion to dismiss, where the Court must ask whether the factual allegations in the complaint give rise to a plausible claim for relief, the type of evidence that may be offered later in litigation is irrelevant.

Second, Deeney states: "Courts exclude regulatory standard as inadmissible in cases where the dose-response relationship and causation are at issue," and, without explaining how that proposition applies to his argument, offers a string of case citations. (ECF No. 24-1 at 10–11.) Again, the Court does not see how this is relevant. Plaintiffs do not rely on regulatory standards to assert that the contamination on Cox's property caused Cox's cancer. To the contrary, they offer specific information about the carcinogenic effect of several toxins found in the plume. (*See* ECF No. 1 at 8–10.)

In sum, the Court rejects Deeney's argument that it is not plausible that an additional two and a half years of unmitigated toxic exposure contributed to Cox's death. (ECF No. 24-1 at 11.) Deeney is, of course, entitled to offer evidence in this case proving that there was nothing he could do between 1998 and 2001 that would have altered Cox's prospects. But for purposes of a Rule 12(b)(6) challenge, Plaintiffs claims against Deeney survive.

### III. Leave to Amend

On August 4, 2017, Plaintiffs filed a motion to amend their complaint. (ECF No. 12-3.) According to the motion, Plaintiffs learned on July 31, 2017, that they had mistakenly omitted Senior as a defendant this case. Plaintiffs seek leave to amend their complaint by adding Senior as a defendant and adding allegations that Senior, as the current owner of the Greenfield Property, also contributed to Cox's death. Under the operative case management order, motions to amend must have been made by October 6, 2017. (ECF No. 5 at 3.) Plaintiffs' motion therefore is timely.

Ametek filed a response to Plaintiffs' motion to amend on August 25, 2017. (ECF No. 23.) It notes that Plaintiffs' justification for seeking leave to amend "does not appear to substantiate good cause nor comport with the history of events." (*Id.* at 2.) Ametek notes that it is more likely that Plaintiffs intentionally omitted Senior from their complaint because much of the complaint is copied from the complaint filed in Case No. 17-cv-00597. Ametek also contends that Plaintiffs should have been aware of the omission by July 6, 2017, when Ametek filed its answer to the complaint.

It is unclear whether Ametek actually opposes the motion to amend. Regardless, Ametek has offered no suggestion of "undue delay, bad faith, or dilatory motive," or that granting the amendment would prejudice Ametek, Deeney, or Senior. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). As a result, the Court GRANTS the motion to amend.

### IV. Conclusion

For the reasons explained above, the Court **DENIES** Defendant Deeney's motion to dismiss (ECF No. 24), and **GRANTS** Plaintiffs' motion to amend the complaint (ECF No. 12).

**IT IS SO ORDERED.**

11

3:17-cv-01211-GPC-AGS

Dated: October 24, 2017

Hon. Gonzalo P. Curiel
United States District Judge